## Camp *against* Wood.

It is essential to the validity of a judgment of a justice of the peace for a sum exceeding 100 dollars, that it should appear upon the face of his record that the parties appeared in person before him and confessed the judgment. Without this the judgment is absolutely void, and therefore not the subject of ratification.

The sale of the defendant's personal property to the plaintiff upon a void judgment, vests no property in him.

ERROR to the common pleas of *Lycoming* county.

Thomas Wood against William E. Camp. This was an action of replevin for a wagon. The property in dispute had belonged to Jacob Beeber, who sold the same to Thomas Wood the plaintiff.

The defendant then called John Quigley, Esq., a justice of the peace, who was sworn and said:—"This is my docket and this the record of a suit before me:"—which was as follows:—

"William E. Camp *v.* Jacob Beeber and Abraham Taylor, trading in the name of Beeber and Taylor.—Amicable action. Debt on assumption, real debt 100 dollars 35 cents. Judgment by

confession for the above amount with costs of suit.    By a line from A. Taylor alone.    Entered 16th of May 1837.    Execution issued to William Dunn, which was returned levied (amongst other things) upon a wagon."

The defendant's counsel then asked the witness "whether the words, 'by a line from A. Taylor, signed by A. Taylor alone,' were not entered by him (the justice) after this judgment had been entered, after this action of replevin was brought, at the instance of the plaintiff in this action, and without notice to W. E. Camp, the plaintiff in the judgment and the defendant in the replevin?"

The plaintiff objected to the question, producing and showing the court the docket aforesaid, together with a line signed A. Taylor, dated May 15th, 1837.    The defendant objected to the letter being shown to the court, and showed a transcript of the 6th of May 1839, to which the plaintiff objected.    The court thereupon, of their own motion, and for their own information, and not as evidence to the jury, asked the witness whether the letter signed A. Taylor, dated 15th of May 1837, was the only authority upon which he entered the judgment, which question was answered in the affirmative, the defendant objecting to the question of the court.

The court on argument overruled the question put by the defendant as irrelevant and illegal, to which the defendant excepted.

The defendant then gave in evidence the docket entry of the said judgment, which purported to be entered on the 16th of May 1837, in an amicable action for 100 dollars 35 cents, " by a line from A. Taylor, Esq., signed by A. Taylor alone."    The defendant also gave in evidence an execution issued on the said judgment on the 17th May 1837, a levy, *inter alia,* upon the wagon in dispute, on the 18th May 1837, and a sale of the same to W. E. Camp, the plaintiff in the execution and defendant in this action, who receipted for the purchase-money on the judgment on the 23d of May 1837.

The court below (Lewis, president) instructed the jury,

1. That the judgment for a sum above the jurisdiction of the magistrate, and without the voluntary appearance of the parties before him, as well as without process, and without any other authority than a letter from one of the defendants without notice to the other, is null and void as regards Jacob Beeber, because the justice transcended his jurisdiction in so entering it.

2. That the sale under the supposed judgment does not transfer the rights of Jacob Beeber to W. E. Camp.

3. That there is no evidence which would justify the jury in finding that Jacob Beeber had ratified the proceedings in such a manner as to affect the rights of the plaintiff.

4. That as the defendant has shown no right under Jacob Beeber it is not material whether the sale of Beeber to the plaintiff was made to defraud creditors or not.    The sale is good between the

[Camp v. Wood.]

parties, and operative until impeached by a creditor of Beeber in some mode authorised by law.

The jury, if satisfied with the evidence, may find for the plaintiff the value of the property as damages for the taking, and interest upon that value, or more, if they think proper, as damages for the detention.

Errors assigned:—

1. The court below erred in overruling the question put by the defendant's counsel to John Quigley, Esq., as contained in the first bill of exceptions, and in not permitting the defendant to have the advantage of the record as it stood at the time this suit was brought.

2. The court erred in their charge to the jury, in saying under the first head, " that the judgment for a sum above the usual jurisdiction of the magistrate, and without the voluntary appearance of the parties before him, as well as without process, and without other authority than a letter from one of the defendants, without notice to the other, is null and void as regards Jacob Beeber, because the justice transcended his jurisdiction."

3. The court erred in stating, " that the sale under the supposed judgment does not transfer the rights of Jacob Beeber to W. E. Camp."

4. The court erred in saying there was no evidence which would justify the jury in finding that Jacob Beeber had ratified the proceedings in such a manner as to affect the rights of the plaintiff.

5. The court erred in saying " that as defendant has shown no right under Jacob Beeber, it is not material whether the sale of Beeber to plaintiff was made to defraud creditors or not."

*Armstrong*, for plaintiff in error, cited 3 *Watts* 381; 6 *Watts* 294. 398; 3 *Penns. Rep.* 98.

*Ellis*, for defendant in error, cited 2 *Whart.* 45. 469; 12 *Serg. & Rawle* 184; 6 *Amer. Com. Law* 253; 1 *Binn.* 106; 1 *Penns. Rep.* 30; 19 *Johns.* 41; 1 *Stark. Ev.* 249.

The opinion of the court was delivered by

KENNEDY, J.—The question, whether the justice of the peace had jurisdiction of the cause, for which he entered the judgment, *by confession*, against Jacob Beeber and Abraham Taylor, in favour of William E. Camp, the plaintiff in error, lies at the foundation of all the errors assigned; for it is very clear, if he had no jurisdiction of the sum or amount, for which the judgment was entered against the defendants therein, that it was *coram non judice*, and therefore, absolutely void. Case of the Marshalsea, 10 *Co.* 76–7; *Bull. N. P.* 65–6, 82–3; *Hardr.* 480; Kempe *v.* Kennedy, 5 *Cranch* 173; Griffith *v.* Frazier, 8 *Cranch* 9; Walker *v.* Turner, 9 *Wheat.* 541. Then if the judgment should be held void for want of jurisdiction, the execution issued upon it was void also, and the seizure and sale of the

[Camp v. Wood.]

goods, by virtue thereof to the plaintiff in error, which are made the subject of claim here, supposing them to have been liable to the payment of Jacob Beeber's debts, as is alleged by the plaintiff in error, did not and could not transfer the right of property in them to him. The civil jurisdiction of justices of the peace in this state, is specially delegated by act of assembly, and limited in its extent. The course of proceeding, to be observed and pursued by them in the exercise of such jurisdiction, which is also prescribed thereby, is certainly in derogation of the common law; and, as has been thought by some, entrenches somewhat upon the provision contained in the constitution of the state, in regard to the trial by jury, on account of its depriving the parties in the first instance, of the right to a trial by jury. There is, therefore, every reason for adhering to, and enforcing the rule, which requires that all inferior tribunals of limited jurisdiction, should be careful, in the first place, to see that they have jurisdiction over the matter, of which they are about to take cognizance, and in the second place, to state in their registry thereof, all that may be requisite to show that they had jurisdiction. Alberti v. Dawson, 1 *Binn.* 106. By the first section of the act of the 20th of March, 1810, *Purd. Dig.* 495 (1831), justices of the peace have jurisdiction granted to them over all causes of action arising from contract, either express or implied, in all cases where the sum demanded is not above one hundred dollars; except in cases of real contract, where the title *to* lands *or* tenements *may come* in question, or action upon promise of marriage. And again by the fourteenth section of the same act, it is enacted, that " any justice of the peace shall take cognizance of any matter or thing made so by this act, for any sum *exceeding* one hundred dollars, if the parties *voluntarily appear before him for that purpose,* and shall proceed for the recovery thereof by entering judgment, if confessed, or submitted to him by reference." The judgment here, the authority to enter which is questioned, is for 100 dollars 35 cents debt on assumption, a sum *exceeding* 100 dollars. Therefore, unless the *parties voluntarily appeared* before the justice, for the purpose of confessing the judgment, he had no cognizance of the matter. The question then arises, does the entry made by the justice in his docket, of his proceeding in the cause, show that the *parties appeared voluntarily* before him for the purpose of having the judgment entered by confession. For it cannot be doubted, that it was indispensably necessary, according to the express terms of the act, that the justice should have had the parties before him *in person,* in order to give him jurisdiction of such sum of money, as that for which he entered judgment, and that they should have come thither voluntarily for that purpose.

I have said *in person,* because I think that a true construction of the act requires it. By the third section thereof, in cases not exceeding 100 dollars, where the defendants are notified by process from the justice, to appear before him, to answer the claims of the

x.—L*

plaintiffs, their appearance by *their agents* is expressly recognized; but nothing of the kind is mentioned in cases exceeding 100 dollars, when the appearance is required to be *voluntary* without process. It may therefore be very reasonably inferred, that if the legislature had intended, that the appearance, in these latter cases, might be by agents, it would have been so expressed as it is in the former. It is not intended, however, to be said, that the justice, in such cases, should state expressly that the appearance *was in person*, because it is conceived this will be inferred, if a voluntary appearance of the parties be set forth in express terms, unless something should appear on the face of the proceedings, showing the contrary. Bigelow *v.* Stearns, 19 *Johns.* 39, 40, 41; Smith *v.* Goodrich, 5 *Johns.* 353–4.

Seeing then, that where the parties appear before the justice voluntarily for such purpose, his jurisdiction extends to any sum of money without limitation, arising out of contracts, with the exception mentioned in the first section of the act, it becomes a matter of the first importance to the interests of the community, that it should be so stated by him in entering the judgment on his docket, as that it shall appear therefrom, that the parties did appear before him. I would also recommend that the appearance should be stated to have been " voluntary," without intending to say, that the insertion of this word on the docket is considered indispensably necessary, in order to show that the justice had jurisdiction of the case; still, however, I think it most advisable, not to depart from the words of the act in any respect whatever. But in the case under consideration, the justice made no entry on his docket of the appearance of either of the parties. He, to be sure, has entered the judgment generally, as being confessed, from which it is attempted to be inferred, that the defendants must have appeared voluntarily in their proper persons before him for that purpose. This, however, we think would be going too far, as it might be attended with dangerous consequences, where the jurisdiction of such an inferior tribunal is extended to any unlimited amount of money; and would, very unnecessarily, as we conceive, be departing from the rule already mentioned, which requires that its proceedings should disclose on their face, all that is necessary to give it jurisdiction, otherwise they will be considered *coram non judice*, and therefore void. Kempe *v.* Kennedy, 5 *Cranch* 173; Griffith *v.* Frazier, 8 *Cranch* 9; Walker *v.* Turner, 9 *Wheat.* 541. And it will not avail that the ground of jurisdiction may be made out by mere inference; for it ought to be stated plainly and distinctly, so that there may be no doubt in respect to it. And this would seem to be the rule which the supreme court of the United States adopted in regard to the circuit courts, though not what are termed, in legal parlance, strictly inferior courts, but courts of special and limited jurisdiction; and accordingly it was held in Bingham *v.* Cabot, 3 *Dall.* 382; Emory *v.* Greenough, *Ibid.* 369; Turner *v.* Enville, 4 *Dall.* 7; Abercrom-

bie *v.* Depuis, 1 *Cranch* 343, that it was necessary to set forth in the record, the citizenship or alienage of the respective parties in order to bring the case within the jurisdiction of the court; and that it could not be inferred from its being set forth that they were respectively inhabitants of different states, or of a foreign country, and of the state in which the suit was instituted.

In considering this case, I have left out of view altogether the words, " by a line from A. Taylor, signed A. Taylor alone," which, the plaintiff in error alleges, were added to the justice's entry of the judgment on his docket, long since this action was commenced; and which he offered to prove by the justice himself, but the court would not permit it. Whether such proof ought to have been received, in case it could have benefitted the plaintiff in error, it is unnecessary to decide now, as we are of opinion that the entry of the justice, without considering the words just repeated as any part of it, is insufficient to show that he had jurisdiction of the case. But I see no reason why the plaintiffs below should not have been permitted, had it been necessary, to give evidence showing a want of jurisdiction in the justice, as against the plaintiff in error, because the latter would have been blamable, for asking the justice to act when he had no jurisdiction.

The judgment then being void for want of jurisdiction, the seizure and sale of the goods to the plaintiff, who is the plaintiff in error here, under an execution issued upon it, passed no title whatever for the goods to him. Though it may be, that the execution would have excused the constable from being deemed a trespasser in taking the goods, provided they had been the property of the defendants in the execution, or of either of them, yet it would have been no excuse or justification for the plaintiff in error; because he was bound to know, that the justice had no jurisdiction or authority to enter such judgment, and therefore ought not to have applied to him for that purpose. Higgenson *v.* Martin & Hadley, *Bull. N. P.* 83.

The court below were also right in charging the jury, that there was no evidence, which would justify them in finding that Jacob Beeber had ratified the proceeding in such a manner as to affect the rights of the plaintiff below. For how can a proceeding that is absolutely void be ratified? But in truth there is no evidence whatever tending to show that Beeber ever intended any thing of the kind.

The court were also correct in telling the jury, that the transfer of the property or goods in question, by Beeber to the plaintiff below, was sufficient to entitle him to recover them from the plaintiff in error, seeing the latter was a trespasser in taking them, notwithstanding the transfer by Beeber to the plaintiff below, might have been made to defraud the creditors of Beeber.

Judgment affirmed.